IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, <br><br> Plaintiffs, <br><br> vs. <br><br> LOCAL 743, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO, <br><br> Defendant. | Case No. 05 C 4642 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Secretary of Labor filed a complaint against Teamsters Local 743 alleging that the Local violated section 401 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 481-84, in its December 2004 election. The Secretary seeks an order declaring the December 2004 election null and void for the offices of President, Vice President, Secretary-Treasurer, Recording Secretary, and three Trustees. The Secretary also asks the Court to order a new election for those offices, to be held under her supervision.

The Secretary alleged in her complaint that in the December 2004 election, Local 743 failed to provide adequate safeguards to ensure a fair election and denied the right of candidates to have observers present during several phases of the election, in violation of section 401(c) of the LMRDA. The Secretary further alleged that Local 743 violated section 401(e) of the LMRDA when it denied members in good standing the right to vote by mailing ballots to

incorrect addresses, where they allegedly were marked by individuals other than the designated recipients but nonetheless counted in the election tally. The Secretary also contends that Local 743 violated section 401(e) by failing to preserve its election records for one year.

The Secretary has moved for entry of partial summary judgment. She contends that complainant Richard Berg exhausted his internal union remedies before filing his complaint with the Secretary. She also contends that Local 743 violated section 401(e) by failing to preserve all records used to determine voter eligibility during the vote tally. Local 743 has cross-moved for summary judgment, arguing that Berg failed to exhaust internal union remedies.

For the following reasons, the Court grants the Secretary's motion in part and denies it in part and denies Local 743's motion.

**Facts**

Local 743 is a local chapter of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America. On December 4, 2004, Local 743 held an election for officers. The election was subject to the provisions of Title IV of the LMRDA. At the time of the election, Local 743 had approximately 12,000 members.

On December 6, 2004, Richard Berg, a Local 743 member in good standing, filed a post-election protest with Local 743's Secretary-Treasurer. Berg alleged several election irregularities in both the initial October 2004 election and the rerun election held on December 4, 2004.[1] Regarding the December 2004 election, he alleged, among other things, the following:

---

[1] In October 2004, Local 743 scheduled and attempted to conduct the triennial election of its officers, as required by 29 U.S.C. § 481(b). The election was later voided after Berg filed an election protest claiming that not all Union voters requesting ballots had received them. The October 2004 election protest has little bearing on the instant suit. The Seventh Circuit offers a
(continued...)

2

Patricia Velasco, the election supervisor, did not allow the 743 New Leadership slate (Berg's slate) to monitor the election; she did not allow the New Leadership slate to challenge any ballots; an employee with allegiance to the incumbent 743 Unity slate had resolved all challenges; there were no adequate safeguards of the integrity of the vote, making it likely that voter fraud occurred; many members who requested ballots did not receive them; incumbent officers and their agents collected ballots and marked and mailed them for members employed at Rush Hospital and at other units of the Local; and the incumbent 743 Unity slate intimidated members by telling them that if they voted for the 743 New Leadership slate, they would lose their jobs and no longer be in the Union. *See* Pl. Ex. 1.

On December 7, 2004, International Brotherhood of Teamsters (IBT) Joint Council 25 confirmed by letter that it had received Berg's post-election protest. On February 25, 2005, IBT Joint Council 25's Secretary-Treasurer scheduled Berg's post-election protest for hearing on Monday, March 21, 2005. Due to a scheduling conflict, the hearing was rescheduled for April 7, 2005. On March 31, 2005, Berg filed a complaint with the Department of Labor's (DOL) Office of Labor Management and Standards. Over a year after Berg's post-election protest, on March 17, 2006, the Executive Board of Joint Council 25 issued its decision on Berg's complaint.

Prior to the December 2004 election, the IBT provided Local 743 with an election control roster (ECR) report that indicated eligibility of the membership and identified members whose current eligibility was in question. The IBT also provided Local 743 with a set of guidelines for conducting local union elections. The guidelines explained, among other things, that for local

---

¹(...continued)
thorough account of Berg's October 2004 election protest in *Chao v. Local 743, Int'l Bhd. of Teamsters*, 467 F.3d 1014 (7th Cir. 2006).

3

union elections "the ECR cannot be used by itself to conclusively determine whether every individual voter is eligible or ineligible," partly because eligibility to vote in the International's elections differs from eligibility to vote in local union elections. *See* Pl. Ex. 8. The parties dispute whether Local 743 followed the procedures set forth in the IBT's guidelines for conducting local union elections.

In addition to the ECR, Local 743 used a printout dated December 3, 2004 from the Titan data base system, a computer system maintained by the IBT. The election officer, Thaddeus "Ted" Bania, used the printout to review dues payment history and determine voter eligibility for the December 2004 election with regard to individuals who were coded as "challenged" on the ECR.[2] The ECR list contained 3,687 eligible-coded members and 8,975 challenge-coded members. The parties dispute how many ballots Local 743 received from challenge-coded members.

The Local contends that the December 3 printout contained the same information that would have appeared on the screen had Titan been operating on December 4. Local 743 concedes that it cannot re-create the December 3 printout but says that on an individual basis, the dues payment history can be re-created in the Titan system by typing in the individual's name or Social Security number. The Secretary says it is not possible to re-create the necessary data.

During the tallying of the vote, Bania had half of the printout that detailed members' dues

---

[2] According to Bania, in the 2001 and October 2004 Local 743 elections, the election officer did not use a printout but rather checked voter eligibility from a computer using the Titan system. The reason the Local used a printout for the December 2004 election, Bania says, is that the IBT had scheduled maintenance for the Titan system on December 4, and thus the system was not going to be operational on the day the votes were to be counted. On December 3, 2004, Bania printed the members' names from the Titan system, which listed members in alphabetical order and noted their addresses, employers, and last three dues payments. *See* Def. Ex. B.

payment history and another Local 743 employee, Maria Chavez, had the other half. According to Local 743, both slates had observers posted next to Bania and Chavez. The parties dispute the New Leadership slate's ability to challenge ballots during the vote tally.

According to Bania, the competing slates' observers made joint decisions on whether particular members were deemed eligible to vote. Bania says that either observer could challenge eligibility, but Berg disputes that account. The parties dispute whether Bania himself was making eligibility determinations. Bania said that when a member's payment history was questionable, his ballot was placed to the side and not counted. The margin of victory in each race was greater than the number of ballots whose challenge codes had not been resolved (Local 743 did not resolve 298 of the challenge-coded ballots). The Secretary disagrees about the effect of challenge-coded ballots and notes that the margin of victory was far smaller than the 2,017 challenge-coded ballots upon which the election supervisors made voter eligibility decisions.

Bania said that he offered Velasco (the election supervisor) the Titan printout that he had used to review dues payment history in the December 2004 election. Velasco told Bania that she did not need the printout. Because the printout contained confidential personal information, and because he did not believe it was an election record, Bania then shredded the document.

## Discussion

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists only where the evidence would permit a reasonable fact finder to

5

return a verdict for the nonmoving party. When reviewing cross-motions for summary judgment, a court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005) (internal quotations and citations omitted).

Title I of the LMRDA includes a bill of rights for union members, which protects, among other things, their right to vote and participate in union decisions, and allows them to seek appropriate remedies in district court for violations of these rights. *See Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley*, 467 U.S. 526, 536-37 (1984). In Title IV of the LMRDA, Congress created a statutory framework to govern union officer elections. Through Title IV, Congress provided a post-election procedure to protect union democracy through fair and free elections. *Id.* at 539. Congress gave the Secretary the responsibility to enforce Title IV. *Id.*

**1.     Exhaustion of internal union remedies**

The Secretary contends that Berg followed internal union procedures for protesting the election and that he properly filed a complaint with the Secretary after the union failed to reach a final decision within three calendar months of his post-election protest. She argues that because Berg followed the requirements of 29 U.S.C. § 482(a), his complaint was properly before her, and she may pursue the LMRDA suit. Local 743 has cross-moved for summary judgment on the issue of exhaustion, arguing that Berg never pursued remedies available to him under the union's constitution.

A union member who has an election complaint must comply with section 402(a) of the LMRDA. Section 402(a) provides, in pertinent part, that

6

> [a] member of a labor organization – (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month . . . .

29 U.S.C. § 482(a).

Once the union member complies with section 402(a)'s requirements and files a complaint with the Secretary, the Secretary investigates the complaint. If the Secretary finds probable cause to believe that a violation of Title IV has occurred and not been remedied, she may sue the labor organization in district court to set aside an election and direct the conduct of a new election. *See id*. § 482(b). Under Title IV, the Secretary has the exclusive authority to challenge in federal court an election already conducted. *See id.* §§ 482(b) & 483. A suit by the Secretary is the sole post-election remedy for challenging union elections in federal court. *See Local No. 82*, 467 U.S. at 549. The process serves to protect unions from frivolous litigation and unnecessary judicial interference with their elections. *Id.*

In *Reich v. Local 399, International Brotherhood of Electrical Workers*, the Seventh Circuit addressed similar exhaustion arguments concerning union election protests. *Reich v. Local 399, Int'l Bhd. of Elec. Workers*, 3 F.3d 184, 188 (7th Cir. 1993). The court noted that Congress enacted LMRDA as a "'necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations.'" *Id.* at 189 (quoting 29 U.S.C. § 401(b)). But the court was also mindful of the need to balance those interests while also allowing the unions to be free from governmental intrusion: "[LMRDA] manifested Congress' 'concern for the need to remedy abuses in union elections without departing needlessly from the longstanding congressional policy against unnecessary

governmental interference with internal union affairs.'" *Id.* at 189 (quoting *Hodgson v. Local Union 6799, United Steelworkers*, 403 U.S. 333, 338 (1971)).

The IBT Constitution provides that

> [i]n the event there shall be any protest or charge by any member concerning the conduct of the election after the election has been held, such protest or charge shall be made in writing by such member within seventy-two (72) hours setting forth the exact nature and specifications of the protest and his claim as to how it has affected the outcome of the election. Such protest or charge shall be made to the Secretary-Treasurer of the Joint Council with which the Local Union is affiliated and the protest or charge shall be referred to the Joint Council Executive Board for disposition.

*See* Def. Ex. A. Berg filed a detailed post-election protest with the Joint Council on December 6, 2004, less than seventy-two hours of the December 4 election. In his protest, Berg sought relief with regard to both the nullified October 2004 election and the December 2004 election. He asserted claims of election fraud that may have affected the outcome of both elections, but the primary thrust of his complaint was that serious election irregularities had taken place in the December 2004 election. *See* Pl. Ex. 1. Three months after Berg's complaint, the Joint Council had yet to arrive at a final decision. As a result, under section 402(a), Berg could, if he wished, file a complaint with the Secretary by April 6, 2005. And that is what he did.

Local 743 argues that Berg did not even attempt to exhaust his internal union remedies under section 402(a) because his post-election protest did not seek remedies available to him under the union's constitution. Local 743 construes Berg's post-election protest as seeking only the continuation of the nullified October 2004 election, which the local says is an unavailable form of relief under the IBT Constitution. As a result, it claims, Berg did not exhaust the union's remedies, and the Court may not consider the Secretary's suit. Local 743 also argues that the Court should not construe Berg's complaint to the Secretary liberally because Berg has a college

8

degree in business administration and is well-versed in union procedures and elections.

As the Court has already noted, Berg's three-page post-election protest included allegations of election fraud in the October 2004 election, but the bulk of it detailed irregularities in the December 2004 election. *See* Pl. Ex. 1. Berg alleged, among other things, that in the December 2004 election the election supervisor would not let the New Leadership slate monitor the election; she would not allow them to challenge any ballots; an employee loyal to the incumbent slate resolved the challenges from the union; the election lacked adequate safeguards of the integrity of the vote (especially, Berg noted, in light of the irregularities that led to the nullification of the October 2004 election); many members who requested ballots did not receive them; incumbents and their agents collected ballots and marked and mailed them for members employed at Rush Hospital and at other units of the Local; and the incumbent 743 Unity slate intimidated members by telling them that if they voted for the 743 New Leadership slate they would lose their jobs and no longer be in the Union. *Id.*

In determining whether Berg's post-election protest satisfies the exhaustion requirement of section 402(a), the Court "'impose[s] a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question.'" *Reich*, 3 F.3d at 189 (quoting *Hodgson*, 403 U.S. at 341). Similarly, the Court imposes a heavy burden on Local 743 to show that it could not in any way discern that Berg was seeking to void the December 2004 election due to the irregularities he alleged. Local 743's interpretation of Berg's protest as seeking only the continuation of the nullified October 2004 election ignores the bulk of his

complaint to Joint Council 25.³  Though Berg identified irregularities from the October 2004 election and concluded his protest by asking the Joint Council to disqualify the Unity Slate and declare the New Leadership slate the victors, he also included several allegations of election fraud in the December 2004 election.  His post-election protest plainly called into question the accuracy and fairness of that election.

Local 743's argument that because Berg was a more sophisticated union member than most, he should have known how to seek remedies under the IBT constitution with more specificity disregards the Supreme Court's long-standing precedent on what the LMRDA requires.  *See Hodgson*, 403 U.S. at 340-41, 341 n.6; *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 470 (1968).  The Supreme Court has held, without differentiating between the educational backgrounds or experience of union members, that

> any interpretation of the exhaustion requirement must reflect the needs of rank and file union members–those people the requirement is designed ultimately to serve.  We are not unmindful that union members may use broad or imprecise language in framing their internal union protests and that members will often lack the necessary information to be aware of the existence or scope of many election violations.  Union democracy is far too important to permit these deficiencies to foreclose relief from election violations . . .

*Hodgson*, 403 U.S. at 340-41.  The Court further explained that "members should not be held to procedural niceties while seeking redress within their union."  *Id.* at 341 n.6.

Local 743 does not cite authority, nor has the Court found any, to support the contention that union members with a higher-than-average level of education and union experience must file more precise complaints and protests than their less-educated, less-experienced colleagues.  In

---

³ Local 743 avers that the only remedy Berg sought was to be "appointed president of Local 743 based on a partial tally of ballots from an earlier round of voting that was nullified and re-run at *Berg's request.*"  *See* Def. Reply at 2 (emphasis in original).

view of Berg's detailed allegations regarding the December 2004 election, the Court finds that he adequately apprised the union of the violations he alleged, which concerned the accuracy and fairness of the election. Local 743 has not met its burden to establish that it could not discern Berg's complaints, or the remedy he sought, from his detailed post-election protest.

In sum, Berg satisfied the exhaustion requirement of section 402(a). The Court grants the Secretary's motion for summary judgment on the issue of exhaustion and denies Local 743's cross-motion on that issue.

**2.    Scope of Secretary's claim**

Local 743 also argues that the Secretary's claim regarding Local 743's destruction of election records is beyond the scope of Berg's post-election protest and his complaint to the Secretary. As detailed above, the Supreme Court has held that if a union member knows of the facts supporting an alleged violation, the member must explain to his union in a clear manner what problems he contends arose during the election. *See Hodgson*, 403 U.S. at 341. But the Supreme Court has also acknowledged that members often lack the necessary knowledge regarding the details of an election and therefore may be unaware of the scope or existence of many election violations. *Id.* As a result, the Supreme Court has explained, democracy in union elections is far too important to permit such deficiencies to preclude relief for election violations. *Id*. In addressing an issue similar to the one raised by Local 743, the Ninth Circuit held that "[t]he Secretary may litigate a claim if it is related to the election defects about which members complained to the union." *Reich v. Dist. Lodge 720, Int'l Assoc. of Machinists & Aerospace Workers*, 11 F.3d 1496, 1503 (9th Cir. 1993) (citing *Hodgson*, 403 U.S. at 340-41).

In Berg's complaint, filed two days after the December 2004 election, he alleged several

irregularities that called into question the fairness and reliability of that election. The Secretary concedes that Berg did not complain about Bania's destruction of the membership printout in his post-election protest, one of the matters asserted in the Secretary's complaint to this court. But the Secretary argues that it would have been impossible for Berg to raise such a complaint at that time, as Local 743's own timeline of events states that Bania shredded the printout several days later.

The Court agrees with the Secretary that Berg could not have known about the destruction of the Titan printout within the 72 hours he had to file a post-election protest. The Court also finds that the eligibility of members listed on the December 2004 Titan printout is related to the irregularities that Berg alleged in his post-election protest. *See* Pl. Ex. 1. As the Supreme Court has stated, "Congress, having given the Secretary a broad investigative power, cannot have intended that his right to relief be defined by a complaining member's ignorance of the law or the facts or by the artlessness of the member's protest." *Wirtz v. Local Union No. 125, Laborer's Int'l Union of N. Am.*, 389 U.S. 477, 485 (1968). The Secretary's complaint derived from her investigation of Berg's complaint. Though it was not possible for Berg to know that Bania destroyed the Titan printout when he filed the post-election protest, the election defects that the Secretary has raised are related to Berg's protest submitted to Local 743. The Court therefore concludes that the Secretary's section 401(e) claim falls within the ambit of Berg's protest.

**3.    Election records**

The Secretary argues that Local 743 violated section 401(e) of the LMRDA when Bania destroyed the membership printout from the Titan system. Under section 401(e), "[t]he election

12

officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election." 29 U.S.C. § 481(e). The Secretary contends that because the Local used the printout to determine voter eligibility, it was required to preserve it for one year but instead destroyed it.

Local 743 argues that the Titan printout was not an election record under section 401(e) because it was used only by chance. Local 743 explains that in previous elections, election officials retrieved membership data from a computer running the Titan system. Local 743 contends that the critical issue is whether the data that Bania used to determine voter eligibility can be retrieved. Though Local 743 concedes that it cannot re-create the exact printout used on the December 2004 election, it claims that the data can be retrieved on an individual basis.[4] Local 743 argues that once the parties are armed with this data, they can then determine if any alleged violation "may have affected" the outcome of the election.

The Secretary is not entitled to an order for a supervised election unless the union's violation "may have affected" the outcome of the December 2004 election. 29 U.S.C. § 482(c). The Secretary argues that in destroying the Titan printout, Local 743 interfered with her ability to complete her investigation. She contends that she is entitled to a presumption that the union's violations may have affected the outcome of the election.

Section 402(c) of the LMRDA states that

[i]f, upon a preponderance of the evidence after a trial upon the merits, the court finds . . .

---

[4] Bania explained that the Titan system updates changes in members' addresses, phone numbers, etc., regularly and therefore current information in the Titan system most likely would be different from the December 2004 printout. *See* Def. Ex. B.

13

> that the violation of section 481 of this title may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary . . . .

29 U.S.C. § 482(c). The Supreme Court has held that proof of a violation of LMRDA creates a presumption that the violation may have affected the outcome of the election. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 505-6 (1968). But the presumption may be rebutted "by evidence which supports a finding that the violation did not affect the result." *Id.* at 507. Summary judgment is not always an appropriate stage of a LMRDA case to determine whether a violation of the statute may have affected the outcome of an election. *See Marshall v. Local 468, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 643 F.2d 575, 578 (9th Cir. 1980) (finding that whether a violation of LMRDA may have affected the outcome of an election was "not susceptible to determination by summary judgment."); *Chao v. Allied Pilots Ass'n*, No. 05 C 338, 2007 WL 518586, at *11 (N.D. Tex. Feb. 20, 2007) (holding that though the determination of whether the Union violated the ballot-secrecy requirement of the LMRDA is a legal question, "the determination of whether such violation may have affected the outcome of the election is a question of fact.").

At this stage of the litigation, the Court cannot determine whether the destruction of the Titan printout may have affected the outcome of the December 2004 election. Local 743 attests that the necessary information regarding voter eligibility can be retrieved from the Titan system, albeit not in the precise form as it appeared in the December 2004 printout. Because the parties may be able to sift through the Titan data and determine which members were eligible to vote in the election, the Court finds that genuine issues of fact still exist regarding whether Local 743's actions may have affected the outcome of the election.

**Conclusion**

For the reasons stated above, the Court grants in part and denies in part plaintiff's motion for partial summary judgment [docket no. 71] and denies defendant's cross motion for summary judgment [docket no. 72].  The case is set for a status hearing on April 30, 2007 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   April 17, 2007